

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

EAG:JMR
F.#2010R00673

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

April 14, 2011

The Honorable I. Leo Glasser
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

    Re: United States v. Stephen Depiro
      <u>Criminal Docket No. 10-341 (ILG)</u>

Dear Judge Glasser:

    The government respectfully submits this letter in opposition to the defendant Stephen Depiro's April 7, 2011 motion to transfer the above-captioned case to the District of New Jersey pursuant to Federal Rule of Criminal Procedure 21(b). For the reasons set forth below, Depiro's motion should be denied.

I. <u>Background</u>

  A. <u>Prior Waterfront-Related Prosecutions in this District</u>

    As the Court is aware, numerous criminal charges have been brought in the Eastern District of New York against members and associates of the Genovese organized crime family ("Genovese family") and the Gambino organized crime family ("Gambino family") of La Cosa Nostra and corrupt International Longshoremen's Association ("ILA") officials relating to organized crime's long-standing control of the New York and New Jersey waterfront. For example, in <u>United States v. Liborio Bellomo, et al.</u>, Cr. No. 02-140 (S-2) (ILG) (E.D.N.Y.), several powerful members and associates of the Genovese family, including Liborio Bellomo, Ernest Muscarella, Charles Tuzzo and Andrew Gigante, were variously convicted of waterfront-related racketeering and extortion. Powerful members of the Gambino family were also convicted in <u>United States v. Peter Gotti, et al.</u>, Cr. No. 02-606 (FB) (E.D.N.Y.). In <u>United States v. Arthur Coffey, et al.</u>, Cr. No. 04-651 (ILG) (E.D.N.Y.), Albert Cernadas, an ILA Executive Vice President and the president of ILA Local 1235 in Newark, New Jersey at the time of his indictment, pleaded

guilty before the Court to conspiring to commit mail and wire
fraud in connection with an ILA benefit fund.  Most recently,
Michael Coppola, a Genovese family captain from New Jersey and
close associate of Depiro, was convicted by a jury in July 2009
in the Eastern District of New York of racketeering and
racketeering conspiracy, including predicate acts of extortion
and wire fraud in regard to ILA Local 1235 in Newark, New Jersey
and identity fraud.  United States v. Michael Coppola, Cr. No.
08-763 (S-1) (JG) (E.D.N.Y.).  Coppola was a fugitive from a New
Jersey state murder from 1996 until March 9, 2007, when he was
captured on the Upper West Side of Manhattan pursuant to an
Eastern District of New York investigation.  Additionally, in
United States v. Michael Coppola, et al., Cr. No. 07-225 (S-1)
(DLI) (E.D.N.Y.), the government obtained convictions against
Coppola, Linda Coppola (Coppola's wife), Louis Rizzo, Jr.
(Coppola's stepson and Genovese family member) and Philip
Albanese (a Genovese family associate) of charges relating to
conspiring to harbor a fugitive.

    B.   The Instant Case

       On March 30, 2010, Depiro, a soldier in the Genovese
family, was arraigned in the Eastern District of New York in
United States v. Stephen Depiro, Cr. No. 10-341 (ILG) (E.D.N.Y.)
("Depiro I") pursuant to a complaint that charged
(1) racketeering and a racketeering conspiracy, including
predicate acts of conspiring to extort ILA members and officials,
conspiring to use extortionate means to collect extensions of
credit and illegal gambling; (2) collection of unlawful debt
racketeering conspiracy; and (3) conspiracy to harbor a fugitive,
namely, Michael Coppola.  (Compl., Docket No. 1).[1]  After a
detention hearing before Magistrate Judge Robert M. Levy held on
March 31, 2010 and April 1, 2010, the defendant was released on a
substantial secured bond.  On April 28, 2010, a grand jury
sitting in the Eastern District of New York returned an
indictment against Depiro, charging him with three counts related

---

     [1]   In his motion, Depiro incorrectly states that the
complaint alleged a conspiracy to harbor a fugitive as a
predicate act relating to the racketeering and racketeering
conspiracy charges.  (Depiro's Motion ("Def. Mot.") at 1).
Conspiring to harbor a fugitive pursuant to 18 U.S.C. § 371 does
not constitute "racketeering activity" for the purposes of the
RICO statutes.  See 18 U.S.C. § 1961(1).  Accordingly, the
complaint against Depiro charged a conspiracy to harbor a
fugitive as a separate charge from the racketeering charges.
(See Compl. 1-3.)

to the conspiracy to harbor a fugitive (Coppola) between May 2004 and March 2007 in the Eastern District of New York and elsewhere. (Indictment ("Ind."), Docket No. 16). Specifically, Depiro was charged with conspiring to harbor and conceal a person from arrest (Count One), conspiring to assist a federal offender (Count Two) and conspiring to commit misprision of a felony (Count Three).[1] (Id.)

    The government anticipates that a trial in this case would last less than one week. The evidence at trial will principally include (a) Depiro's March 2003 guilty plea allocution in United States v. Stephen Depiro, et al., Cr. No. 02-795 (JWB) (D.N.J.), in which Depiro stated under oath, among other things, that he knew that Coppola was a fugitive and that he used a pay phone to contact Coppola in order to conceal Coppola's whereabouts,[2] (b) court-authorized wiretap interceptions in 2007 during which Depiro was intercepted speaking to Coppola on a pay phone while Coppola was a fugitive, and (c) evidence that Coppola, while a fugitive, traveled using aliases with a co-conspirator through John F. Kennedy International Airport ("JFK Airport") in Queens, New York to and from his apartments on the Upper West Side of Manhattan and in San Francisco, California.

C.   The District of New Jersey Case

    In September 2010, Eastern District of New York prosecutors – Assistant United States Attorneys Taryn A. Merkl and Jacquelyn M. Rasulo – assigned to the instant case were cross-designated as Special Assistant United States Attorneys in the District of New Jersey in order to prosecute, in collaboration with federal prosecutors from that district, Depiro and others regarding additional criminal charges. In the course of the Eastern District of New York's investigation of organized crime's control of the waterfront, it became clear that, in order to pursue certain charges that resulted from this district's ongoing investigation of Depiro and others in one indictment, it was necessary to seek an indictment in the District of New Jersey. Accordingly, the government presented evidence, including evidence previously presented to a grand jury sitting

---

    [1]   On April 29, 2010, the government filed a motion to dismiss the complaint without prejudice.

    [2]   Depiro pleaded guilty in that case to conspiring to commit misprision of a felony, in violation of 18 U.S.C. § 371, and was sentenced to four years' supervised release.

in the Eastern District of New York, regarding Depiro and others
to a grand jury sitting in the District of New Jersey.

On January 20, 2011, a 53-count superseding indictment
returned by a grand jury sitting in the District of New Jersey
was unsealed.  United States v. Stephen Depiro, et al., Cr. No.
10-851 (S-1) (DMC) (D.N.J.) ("Depiro II").  (See Defendant's
Exhibit ("Def. Ex.") C.)  In Depiro II, Depiro and 14 other
defendants, several of whom are associates of the Genovese
family, are variously charged with racketeering conspiracy,
illegal gambling, and extortion of longshoremen who work on the
New Jersey waterfront.  (Id.).  Depiro is specifically charged
with (a) racketeering conspiracy, including predicate acts of
conspiring to extort ILA members, illegal gambling, and
conspiring to use extortionate means to collect extensions of
credit; (b) collection of unlawful debt racketeering conspiracy;
(c) extortion conspiracy; and (d) illegal gambling.  (Id.).
After a detention hearing before Magistrate Judge Claire C.
Cecchi, District of New Jersey, held on January 20, 2011 and
March 8, 2011, Depiro was released on a substantial secured
bond.[3]

Due to the complexity of the charges and the voluminous
nature of the discovery, the case was designated as complex
pursuant to 18 U.S.C. § 3161(h)(7)(B)(ii).  United States v.
Depiro, et al., Cr. No. 10-851 (S-1) (DMC) (D.N.J.) (Docket No.
97).  The Honorable Dennis M. Cavanaugh, District of New Jersey,
ordered that pre-trial motions were due on August 1, 2011 or
ninety days after discovery has been produced by the government,
whichever is later.  (Id.).  A trial date has not been scheduled
in the case.

II.  Discussion

In his motion, Depiro argues that this case should be
transferred from the Eastern District of New York to the District
of New Jersey because: (1) venue is not proper in the Eastern
District of New York (Def. Mot. at 5-6); and (2) even if venue
in the Eastern District of New York is proper, convenience and the
interests of justice warrant transfer of the case to the District
of New Jersey pursuant to Rule 21(b).  (Def. Mot. at 7-12).  For
the reasons set forth below, Depiro's arguments are without
merit.

---

[3]     Contrary to the defendant's assertions, the government
did not argue during Depiro's detention hearings in the District
of New Jersey that Depiro had violated the terms of his pre-trial
release in this case.

A.   Venue is Proper in the Eastern District of New York

    1.   Legal Standard

        Venue is proper in any district in which the crime is committed.  Fed. R. Crim. P. 18.  Title 18, United States Code, Section 3237(a) provides that "any offense . . . begun in one district and completed in another, or committed in more than one district, may be . . . prosecuted in any district in which such offense was begun, continued or completed."  18 U.S.C. § 3237(a).  Where an offense is a continuing one, proper venue "extend[s] over the whole area through which force propelled by an offender operates."  United States v. Johnson, 323 U.S. 273, 275 (1944).  Conspiracy is a continuing offense for the purposes of 18 U.S.C. § 3237(a).  United States v. Tannenbaum, 934 F.2d 8, 12 (2d Cir. 1991).  When a defendant is charged with conspiracy, venue is proper in any district in which "an overt act in furtherance of the conspiracy was committed by any of the coconspirators."  United States v. Ramirez-Amaya, 812 F.2d 813, 816 (2d Cir. 1987) (holding that venue was proper in a narcotics importation conspiracy case in which a plane transporting narcotics flew through the prosecuting district but did not land there).  "The defendant need not have been present in the district, as long as an overt act in furtherance of the conspiracy occurred there."  United States v. Naranjo, 14 3d. 145, 147 (2d Cir. 1994) (citing Hyde v. United States, 225 U.S. 347, 362-63 (1912)).

    2.   Application

        In this case, the indictment properly alleges venue in the Eastern District of New York.  Each count in the indictment alleges that the charged conspiracy occurred in the Eastern District of New York and elsewhere.  (Ind. ¶¶ 1-6).  Additionally, each count in the indictment alleges as an overt act that "Michael Coppola, together with a co-conspirator, traveled through John F. Kennedy International Airport in Queens, New York, during which travel Michael Coppola and the co-conspirator used aliases."  (Id. ¶¶ 2(a), 4(a), 6(a)).  Furthermore, as noted above, the government intends to introduce evidence at trial that will establish venue.  Specifically, the government intends to introduce travel records, produced to Depiro in discovery, establishing that Coppola repeatedly flew from JFK Airport to San Francisco, California using aliases during the time period charged in the indictment.  Accordingly, venue is proper in the Eastern District of New York.

B.   Depiro Has Not Met His Burden to Overcome the
     Presumption that the Prosecution Should Remain in this
     District Where it Was Initially Filed

     1.   Legal Standard

          Federal Rule of Criminal Procedure 21(b) ("Rule 21(b)")
provides that the Court "may transfer" a case "to another
district for the convenience of the parties and witnesses and in
the interests of justice." Fed. R. Crim. P. 21(b).  It is well
established that the disposition of a Rule 21(b) motion is
committed to the sound discretion of the district judge and that,
in exercising that discretion, the Court should evaluate 10
factors first identified by the United States Supreme Court in
Platt v. Minnesota Mining & Mfg. Co., 376 U.S. 240, 243-44
(1964).  See, e.g., United States v. Maldonado-Rivera, 922 F.2d
934, 966 (2d Cir. 1990).  These factors are: (1) location of the
defendant; (2) location of the witnesses; (3) location of the
events likely to be at issue; (4) location of relevant documents
and records; (5) potential for disruption of the defendant's
business; (6) expense to the parties; (7) location of counsel;
(8) relative accessibility of the place of trial; (9) docket
condition of each district; and (10) any other special elements
that might bear on the transfer motion.  Platt, 376 U.S. at 243-
44; Maldonado-Rivera, 922 F.2d at 966.  "No one of these factors
is dispositive; rather, a court should weigh all of these factors
and determine whether the interests of justice would be better
served by changing the trial venue." United States v. Guastella,
90 F. Supp. 2d 335, 338 (S.D.N.Y. 2000) (citations omitted).

          While the determination of a defendant's motion to
transfer under Rule 21(b) depends on the facts and circumstances
of each case, there is a general presumption that a criminal
prosecution should be retained in the district in which it was
initially filed.  See, e.g., Guastella, 90 F. Supp. 2d at 338;
United States v. The Spy Factory, 951 F. Supp. 450, 464 (S.D.N.Y.
1997); United States v. United States Steel Corp., 233 F. Supp.
154, 157 (S.D.N.Y. 1964).  The defendant bears the burden of
justifying a transfer pursuant to Rule 21(b).  Guastella, 90 F.
Supp. 2d at 338; United States v. Persico, 621 F. Supp. 842, 858
(S.D.N.Y. 1985).[4]

_____

          [4]   See also United States v. Jones, 43 F.R.D. 511, 514
(D.D.C. 1967) ("[W]e must take as our starting point the
preliminary proposition that sound judicial administration and
the need for efficient handling of the prosecuting attorney's
work load suggest that only rarely and for good cause should a

Where, as here, the two courthouses at issue are in close proximity to one another, the factors bearing on convenience should be given little weight.  See, e.g., United States v. Elson, 968 F. Supp. 900, 903 (S.D.N.Y. 1997) (citing Persico, 621 F. Supp. at 858-59).  As the district court stated in Persico:

> When a racketeering case is properly venued in either of two adjacent districts . . . it is difficult to imagine convenience interests that would compel transfer of the case.  As between the two districts the situs of prosecution is generally a decision more properly within the province of the Attorney General than a federal district judge.

621 F.Supp. at 858-59 (denying defendant's motion to transfer venue from the Southern District of New York to the Eastern District of New York pursuant to Rule 21(b)).

2.   Application

In this case, the Platt factors do not weigh in favor of transferring the case to the District of New Jersey.  Because the Eastern District of New York and the District of New Jersey are adjacent districts, and the courthouses are in close proximity to each other,[5] the Platt factors relating to the location of the defendant, the witnesses and the attorneys, the location of discovery, court accessibility and costs are all neutral, weighing neither in favor, nor against a transfer of venue.  Accordingly, Depiro relies heavily on "special elements" in support of his motion.  Depiro's cited circumstances, however, do not militate in favor of transferring this case to the District of New Jersey pursuant to Rule 21(b).

_____

prosecution be withdrawn by a judicial act from the court in which it was brought. . . .  This is especially true where, as in this case, government counsel has carried it before the Grand Jury.  Accordingly, to warrant a transfer the defendant must demonstrate and the Court must be satisfied that the prosecution in the district where the indictment was properly returned will result in a substantial balance of inconvenience to himself.") (citations omitted).

[5]   The two courthouses are approximately 13 miles apart by car.

7

First, Depiro argues that because the charges in Depiro I in this district are related to the charges in Depiro II in the District of New Jersey, the interests of justice are best served by transferring the instant case to that district. (Def. Mot. at 9-11). The government does not contest that Depiro's participation in a conspiracy to harbor fugitive Michael Coppola (the charges in Depiro I) relates to Depiro's participation in the Genovese family's long-standing conspiracy to extort ILA members in New Jersey at Christmastime (as charged in Depiro II). (Indeed, the evidence makes clear that Coppola was able to continue his participation in the waterfront extortion conspiracy while he was a fugitive due, in part, to Depiro's assistance.) However, while this factor may weigh in favor of transferring venue, it is certainly not dispositive, as Depiro suggests.

Depiro also argues that, because the cases pending against him are related, transfer of the instant case to the District of New Jersey would eliminate the need for two lengthy trials in which the government will seek to admit the same "substantial evidence regarding the Genovese organized crime family" in both trials. (Def. Mot. at 11-12). Depiro further argues that transferring venue to the District of New Jersey and combining the charges in Depiro I with Depiro II for trial would spare the government and the defendant "significant expense." (Id. at 11).[6] Depiro's assumption, however, that the trial in this case (Depiro ) would involve voluminous enterprise evidence is false. As explained above, the government anticipates that the trial in this case will be brief, and will involve such evidence as Depiro's prior plea allocution, Coppola's travel records, and a few short wiretap interceptions of Coppola and Depiro. By contrast, at the potential trial in Depiro II in the District of New Jersey, the government intends to call at least

---

[6]   As Depiro concedes in his motion, transferring this case to the District of New Jersey would not automatically result in the two indictments pending against Depiro being treated as one indictment for trial. (Det. Mot. at 1 n.1). Instead, Federal Rule of Criminal Procedure 13 provides that the court "may order that separate cases be tried together as though brought in a single indictment . . . if all offenses and all defendants could have been joined in a single indictment." Fed. R. Crim. P. 13 (emphasis added). Thus, if the Court transfers the case to the District of New Jersey, Judge Cavanaugh (or the judge assigned to the case), would have discretion to decide whether the indictments would be treated as a single indictment for trial.

five cooperating witnesses and numerous victim witnesses,[5] and anticipates that the trial will last at least several weeks. Accordingly, Depiro's claim that significant judicial resources will be spared and expense to the government and the defendant will be saved by transferring venue to the District of New Jersey is without support.

Nor is there any merit to Depiro's dubious claim that the District of New Jersey is "more 'suitab[le] . . . for accurate factfinding'" than the Eastern District of New York. (Det. Mot. at 7).  The Eastern District of New York has a long history of presiding over cases related to the Genovese and Gambino families' control of the New York/New Jersey waterfront. Indeed, Depiro's co-conspirators relating to harboring charges in this case were all convicted in this district, including Michael Coppola himself.  Considering that this case has been pending before the Court for over a year, transferring this case to the District of New Jersey will do little more than delay a short trial in this case for a potentially significant period of time.[6] Although the defendant believes it is his best interest to delay the trial in this case, the public's interest in ensuring that cases are brought to trial in a timely manner should not be ignored.  See Zedner v. United States, 547 U.S. 489 (2006) (holding that a criminal defendant cannot waive prospective application of the Speedy Trial Act because the Act protects both the interests of the defendant and the public interest).  In sum, the defendant has failed to meet his burden to show that transfer of venue to the District of New Jersey is in the interests of

---

[5]     The superseding indictment in Depiro II contains 12 John Doe victims.  (See Def. Ex. C.)

[6]     The defendant also argues that the government brought harboring-related charges against Depiro in this district in March 2010 – almost a year prior to charging Depiro in the District of New Jersey – so that, in the event that Depiro were released pre-trial in both districts, the government could purposely thwart Depiro's pre-trial release by convicting him in this case, resulting in his incarceration and rendering him "unable to adequately assist in defending the racketeering charges he faces in DNJ." (Def. Mot. at 12).  This proposition is baseless.  If Depiro is incarcerated as a result of the instant case prior to the resolution of the charges pending against him in New Jersey, it is because he has been convicted of a serious crime – not because of a diabolical plan on the part of the government.

justice pursuant to Rule 21(b).  Accordingly, the defendant's
motion should be denied.

                              Respectfully submitted,

                              LORETTA E. LYNCH
                              United States Attorney

                    By:   /s/ Jacquelyn M. Rasulo
                          Jacquelyn M. Rasulo
                          Assistant U.S. Attorney
                          (718) 254-6103

cc:  Sarita Kedia, Esq. (by ECF)
     Clerk of the Court (ILG) (by ECF)